**Affirmed and Majority and Concurring Memorandum Opinions filed March 24, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00800-CV

---

## IN THE INTEREST OF M.L.G.J., T.M.J., T.L.W., JR., M.A.J., T.P.R.J., B.W.D. III, M.R.J., and L.C.J., CHILDREN

---

### On Appeal from the 314th District Court
### Harris County, Texas
### Trial Court Cause No. 2013-03157J

---

## C O N C U R R I N G   M E M O R A N D U M   O P I N I O N

Mother was thirteen years old when she had her first child. She was fifteen years old when her second child was born. At the time of the termination hearing, she was almost twenty-eight years old and had eight children by five different fathers. Mother's seventh child was born while she was on probation for cocaine possession. She violated the terms of the probation and was sent to jail. Her eighth child was born while she was in jail. None of these facts attracted the attention of DFPS until two months before Mother was due to be released from jail.

Mother had left her children in the care of another woman, Betty, and Betty's husband is the father of two of Mother's children. The children were removed from that home while Mother was in jail. Mother went to jail in December of 2011 and the children were removed in May of 2013. DFPS alleged that the children were neglected. There was no evidence that Mother knew that Betty and the father of two of her children would neglect the children. Nor was there any evidence of how long the children had been neglected. Apparently, Betty was in jail and the children were left alone for two days in the care of Betty's older daughter, who was seventeen years old. Another one of Betty's daughters called DFPS. The father was not home and did not return the caseworker's phone call.

The trial judge stated that this case is "not a very strong case," and took the case under advisement. Today, the court affirms that judgment, and I concur because there is *sufficient* evidence to support the judge's decision. But why was it a tough call for the trial judge? It was a tough call because none of the parties presented much-needed evidence for the judge. The trial lasted for about an hour. The examination section was transcribed in just forty-three pages. The exhibits are unenlightening—except for the initial removal affidavit, which is full of hearsay. In fact, most of the evidence detailed in the majority opinion came from the removal affidavit. Only three witnesses testified: a DFPS caseworker, Mother, and a Child Advocate. There were eight lawyers at trial; one for DFPS, one for Mother, one for the children, and five more representing the fathers. Seven of the eight lawyers were court-appointed; DFPS had its own counsel.

The testimony of both the caseworker and the Child Advocate were conclusory as to the question of the best interests for the children. The caseworker did not describe the current living conditions for any of the children, other than to say that they were in foster care and doing well. She talked to the oldest child, who

liked her current placement, but who also said that she wanted to be with Mother. The caseworker never asked the other children where they wanted to live.

The Child Advocate[1] said the two oldest children were doing great in school, but never contrasted their current situation with their previous situation. The third child was not doing well in school and wanted to be with Mother. The Child Advocate never saw where Mother was currently living.

Although several of the children were certainly old enough to be witnesses,[2] they were not called by anyone—not DFPS, not by their own lawyer, and not by Mother's lawyer.[3] There is nothing in the record as to how Mother took care of the children before she went to jail. There are no school records. There are no medical records. Someone must have helped Mother when she was thirteen years old and with a baby, but we know nothing. We do not even know where the children lived before Mother went to jail. We do not know how the children did while living with Betty and her husband. We have minimal information about where the children are living now. Mother was living with an aunt at the time of trial. The aunt was not called to testify about Mother's fitness as a parent. Mother did not provide any tangible proof that she was employed, nor what kind of housing she could provide for the children. Mother never told the judge her education or her plans for the children.

---

[1] The Child Advocate was very involved in the case, although that was not necessarily clear from her testimony. None of the attorneys tried to elicit any useful information from her when she was on the stand. In fact, the trial judge asked her questions *after closing arguments* when he was worried about his decision.

[2] The oldest child was fourteen at the time of trial, the second child was twelve, and the third was ten.

[3] In defense of Mother's lawyer, perhaps he knew that all of this information that I have detailed would not have helped. But if not, then DFPS should have obtained it and offered it.

Simply put, much-needed evidence is missing from this case. Parental rights are important. To ensure that the trial court makes the correct decision, the parties should get better evidence—all of it—and make it known to the court.


/s/    Tracy Christopher
       Justice


Panel consists of Justices Christopher, Donovan, and Wise. (Donovan, J., majority)